**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**ANGLIA ADAMS,**

      **Plaintiff,**

                               **Civil Action 2:20-cv-4006**

      **v.**                        **Judge Edmund A. Sargus, Jr.**

                               **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Anglia Adams, brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security ("Commissioner") denying her application for

Social Security Disability and supplemental security income ("SSI").  Pending before the Court

is Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition

(ECF No. 14), and the administrative record (ECF No. 10).  Plaintiff did not file a Reply.  For the

reasons that follow, the Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's

Statement of Errors and **AFFIRM** the Commissioner's non-disability determination.

## I.      BACKGROUND

Plaintiff filed her applications on July 14, 2017, alleging that she became disabled on

August 31, 2015.  (R. at 328-333; 334-340.)  Plaintiff's application was denied initially and upon

reconsideration.  (R. at 160-229.)  After presiding over a hearing on May 16, 2019,

Administrative Law Judge ("ALJ") Julianne Hostovich issued a decision on June 25, 2019,

finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 110-

123.)  That determination became final when the Appeals Council denied Plaintiff's request for

administrative review on April 27, 2020.  (R. at 1–7.)  Plaintiff timely commenced this action.
(ECF No. 1.)

## II.     RELEVANT RECORD EVIDENCE

## A.     Relevant Hearing Testimony

At the hearing, Plaintiff testified to the following about her back and neck pain.  In
response to questions from her counsel, Plaintiff testified that her lower back pain feels like
"stabbing, burning, and it goes down [her] legs, and then to [her] feet."  (R. at 143.)   She
explained that she has numbness and tingling and "can't go barefooted because if [she] step[s] on
a breadcrumb, it seems like a rock."  (R. at 144.)  Further, she stated that she cannot wear shoes
or boots "for very long" because her toes and feet "hurt so bad."  (*Id.*)  Her left leg is worse than
her right because she also has issues with her left knee.  (*Id.*)  She recounted that it takes her "a
long time to do everything" because standing requires her to take breaks and sit down.  (R. at
144-145.)  She confirmed that she uses heat and ice for pain.  (R. at 145.)  She also testified that
she has had multiple shots in her back since 2016.  (*Id.*)  These shots helped initially but she
would need one every three months.  (*Id.*)  More recently, the relief only lasted a month.  (Id.)
She has been through physical therapy which helped at first "but then, when they did the
traction" she "laid in [her] chair for three days" because she "hurt so bad."  (*Id.*)  Plaintiff also
testified that she has a history of neck pain and had undergone surgery to remove two discs and
insert a titanium cage.  (R. at 145-146.)  Her neck "hurts all the time" and she has trouble turning
her head left and right.  (R. at 146.)

**B.**     **Relevant Medical Records**

The ALJ summarized the relevant medical records concerning Plaintiff's physical

symptoms as follows:

> [ ]. Records from Melissa Maston, APRN established the [Plaintiff] complained
> of back, neck, upper extremity, and bilateral leg pain (Exhibit 5F). An EMG/nerve
> conduction study of the [Plaintiff]'s bilateral upper extremities dated December
> 21, 2015, showed severe right median neuropathy of the right and left wrist and
> with low normal left ulnar sensory response and mild right ulnar sensory
> neuropathy (Exhibit 2F). The [Plaintiff] continued to report pain. Ms. Maston
> prescribed medication, physical therapy, and administration of Depo-Medrol
> injection. She was referred to a neurosurgeon (Exhibit 5F). Neurology records
> from Brian Showalter, PA-C dated March 30, 2016, evidenced the [Plaintiff]'s
> range of the cervical spine was moderately reduced and pain in left upper
> extremity but that otherwise her examination was normal (Exhibit 8F). X-rays of
> the [Plaintiff]' s cervical spine from March 2016 showed no fracture of
> subluxation only mild cervical spondylosis (Exhibit 9F). An MRI of the
> [Plaintiff]'s lumbar spine from March 2016 showed moderate multilevel
> degenerative disc disease most pronounced at L5-Sl with marked disc space
> narrowing with modic type II end-plate changes. In addition[,] there was material
> filling the right neural foramen at L5-S 1 which could represent a foraminal disc
> herniation and some associated spurring that appeared to impinge upon the
> existing right L5 nerve root, clinical correlation recommended and mild bilateral
> neural foraminal narrowing at L4-5 due to diffuse disc bulging in combination
> with facet overgrowth and ligamentum flavum hypertrophy (Exhibit 3F). An MRI
> of the [Plaintiff]'s cervical spine from April 2016 demonstrated large prominent
> posterior disc space complex lateralizing the left encroaching left foramin and left
> ventral canal with mild left ventral cord impingement with marked central canal
> stenosis with moderate to moderate left foraminal stenosis and disc herniation
> with marginal spurs and slight cephalad extrusion causing marked central canal
> stenosis and mild ventral impingement with moderate left foraminal stenosis at
> the C5-C6 level (Exhibit 9F). In April 2016, Mr. Showalter noted no change in
> physical examination. He recommended surgery to improve cervical symptoms
> (Exhibit 8F).

Pain management records from Kelly Lindsay, M.D., dated April 2016 evidenced the [Plaintiff] was present for back and neck pain. She had decreased range of motion of the cervical and lumbar spine. The [Plaintiff]'s straight leg raise testing was negative bilaterally. There was positive Tinel testing of the bilateral wrists. The [Plaintiff] had slight decreased muscle strength of the left upper extremity at 4+/5 but normal in the right. The [Plaintiff]' muscle strength testing of the bilateral lower extremities was normal. Her gait was normal. The [Plaintiff]'s sensory examination was intact in both bilateral upper and lower extremities. She noted weakness in left hand was related to carpal tunnel syndrome. She wanted to proceed with treatment of the lumbar spine and hold off on treatment of the cervical spine (Exhibit 6F). However, neurology records evidenced the [Plaintiff] failed conservative treatment of the cervical spine and on June 30, 2016, underwent cervical corpectomy with fusion and plating (Exhibit 7F). Post-operative notes reveal the [Plaintiff] reported doing well. She stated her neck and left pain had resolved but then returned. Her muscle strength and grip strength of the left upper extremities was 5-/5 but demonstrated normal range of motion and muscle tone. She was prescribed a steroid pack. Imaging of the [Plaintiff]'s cervical spine showed status post C6 corpectomy, hardware appeared adequately aligned, mild degenerative disc disease with slight spurring anteriorly at C4-5, which was stable since prior study, mild facet arthritis throughout the cervical spine (Exhibit 8F). On August 5, 2016, Sheena Geer, FNP noted the [Plaintiff] reported 75-100 percent improvement of pain since surgery and that she had increased activity level. She did complain of lumbar pain (Exhibit 8F).

During follow up with Marci Estock, P A-C on September 2, 2016, the [Plaintiff] reported doing well and that she was happy with her progress. X-rays of the [Plaintiff]'s cervical spine showed stable postoperative examination. Mr. Estock recommended starting physical therapy. On October 17, 2016, Mr. Showalter stated the [Plaintiff] indicated she needed to return to work. Mr. Showalter noted Dr. Khosrovi agreed to let her go back to work at five months without restrictions. He also indicated the [Plaintiff] had significant lumbar disease and suggested trial facet blocks (Exhibit 8F). A progress note from Mr. Showalter dated December 19, 2016, revealed the [Plaintiff] continued to report improved overall pain since neck surgery. She continued to report low back pain. Mr. Showalter ordered an EMG/nerve conduction study of the lower extremities and possibly steroid injections (Exhibit 8F). In January 2017, Dr. Reyes prescribed Hydrocodone for back pain (Exhibit 14F). In February 2017, the [Plaintiff] underwent an EMG/nerve conduction study of the [Plaintiff]'s bilateral lower extremities which showed chronic right L5-S1 polyradiculopathy or S1 radiculopathy, with chronic denervation and mild right lumbar radiculopathy at L2, L3, or L4 with mild chronic denervation (Exhibit 14F).

Neurology treatment notes from June 12, 2017, revealed the [Plaintiff] reported regarding her cervical spine she was doing well and reported improvement with physical therapy (Exhibit 8F). Treatment records from Dr. Reyes from 2017 evidenced the [Plaintiff] continued to complain of low back pain radiating into her bilateral lower extremities. Her examination was essentially normal. Dr. Reyes indicated the [Plaintiff] wanted to wait on injections and prescribed Hydrocodone (Exhibit 19F).

On December 5, 2017, Chad Showen, PA noted the [Plaintiff] exhibited pain with straight leg raise testing, the left worse than the right but negative findings. Mr. Showen indicated the [Plaintiff]'s range of motion of the lumbar spine was limited. Her sensory was intact. There was no evidence of atrophy. The [Plaintiff]'s muscle strength testing was 5/5. He recommended injection to hold her over until she could find somewhere to go for pain management (Exhibit 20F). The [Plaintiff] followed up with neurological associates in which Sheena Geer, FNP noted mild tenderness of the lumbar spine. She also indicated only mildly reduced range of motion of the lumbar spine. Her straight leg raise testing was negative. The [Plaintiff]'s muscle strength testing of the bilateral and upper extremities was normal. She had no evidence of atrophy. Ms. Geer indicated her sensation was intact. She ordered an MRI of the lumbar spine. Ms. Geer also recommended referral to Pain Clinic in which she declined. The MRI of the lumbar spine showed multilevel spondylosis most significantly at L4-5 and L5-S1, at L4-5 multifactorial mild to moderate spinal canal stenosis and mild to moderate bilateral foraminal stenosis with worsening, and L5-S1 level worsening disc degeneration with broad disc osteophyte complex and facet arthropathy resulting in moderate bilateral foraminal stenosis with contract of the exiting L5 nerve root with worsening more notably on the right. During follow-up with Ms. Geer the [Plaintiff] reported symptoms improved 50 percent. Ms. Geer indicated the [Plaintiff] might have a disc making contact with L5 exiting nerve root but the [Plaintiff] felt her symptoms were tolerable. She noted improvement with injections and wished to continue with conservative treatment. The [Plaintiff] reported neck stiffness. Ms. Geer ordered physical therapy for both cervical and lumbar spine (Exhibit 26F). The [Plaintiff] underwent injections and physical therapy in which she reported some improvement. In fact, on September 17, 2018, the [Plaintiff] presented to Widalys Adames-Mendez, M.D., to establish care and voiced minimal pain complaints. Her examination was essentially normal.

Dr. Mendez stated the [Plaintiff]'s conditions were stable (Exhibit 30F). Progress notes from Mr. Showen revealed the [Plaintiff] underwent injections and reported relief but not long-term relief. He indicated decreased range of motion of the

lumbar spine, pain with straight leg raise testing left worse than right, and tenderness to bilateral low back and sacroiliac joint area. Her gait was normal. She had no evidence of atrophy and sensation was intact. Mr. Showen recommended an updated MRI of the lumbar spine but there is no indication it was performed (Exhibit 37F). Most recently, the [Plaintiff] presented to Michail Vasilakis, M.D. for evaluation of her back pain (Exhibit 38F). Dr. Vasilakis performed an examination of the [Plaintiff], noting she appeared healthy and comfortable, had decreased range of motion, normal muscle tone and abnormal strength of 4/5. Dr. Vasilakis indicated that she had failed conservative treatment and recommended fusion surgery.

The [Plaintiff] does experience some limitations due to lumbar and cervical spine, and carpal tunnel syndrome. However, the record also supports the [Plaintiff] obtained improvement with surgery of the cervical spine, injections, physical therapy, and medication. The [Plaintiff] even stated that the symptoms were tolerable and that she wished to proceed with conservative treatment. [ ].

(R. at 116-118.)

## III.   ADMINISTRATIVE DECISION

On June 25, 2019, the ALJ issued her decision. (R. at 110-123.)  At Step One[1] of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantially

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

   1.   Is the claimant engaged in substantial gainful activity?
   2.   Does the claimant suffer from one or more severe impairments?
   3.   Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
   4.   Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

gainful during the period since August 31, 2015, the alleged onset date. (R. at 112.) At Step

Two, the ALJ found that through the date last insured, Plaintiff had the following severe

impairments: degenerative disc disease, bilateral carpal tunnel syndrome, chronic obstructive

pulmonary disease, and degenerative joint disease. (*Id*.) She further found at Step Three that

Plaintiff did not have an impairment or combination of impairments that met or medically

equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(R. at 114.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity

("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform light work as defined in
> 20 CFR 404.1567 (b) and 416.967(b) except never climbing ladders, ropes, or
> scaffolds. She can occasionally balance, stoop, and crawl and frequently climbing
> ramps and stairs and crouch. The claimant can frequently handle, finger, and feel.
> The claimant can tolerate frequent exposure to extreme heat, humidity, fumes,
> odors, dusts, gases, and poor ventilation.

(R. at 115.)

At Step Four, the ALJ determined that Plaintiff was unable to perform any past relevant

work. (R. at 121.) At Step Five, the ALJ relied on testimony from a Vocational Expert ("VE") to

find that given Plaintiff's age, education, work experience, and RFC, Plaintiff could perform

---

5.    Considering the claimant's age, education, past work experience, and residual
      functional capacity, can the claimant perform other work available in the national
      economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

other jobs that existed in significant numbers in the national economy such as non-postal mail

clerk and sorter.  (R. at 122.)  Consequently, the ALJ concluded that Plaintiff had not been

disabled under the Social Security Act since August 31, 2015. (*Id*.)

## IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. §

405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must

"'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision

of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.    ANALYSIS

Plaintiff sets forth one contention of error: (1) the ALJ failed to adequately explain her finding at Step Three that Plaintiff did not meet or equal the criteria of Listing 1.04A. The Undersigned disagrees and finds that the ALJ's conclusion is supported by substantial evidence.

A plaintiff's impairment must meet every element of a Listing before the Commissioner may conclude that he or she is disabled at step three of the sequential evaluation process. *See* 20 C.F.R. § 404.1520; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986). The plaintiff has the burden to prove that all of the elements are satisfied. *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984). The regulations provide that in making a medical equivalence determination, the Social Security Administration will "consider the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 404.1526(c). Nevertheless, "[t]he burden of providing a. . . record. . . complete and detailed enough to enable the Secretary to make a disability determination rests with the [plaintiff]." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision denying benefits affirmed where medical evidence "almost establishes a disability" under Listing).

! The ALJ found that Plaintiff's back impairment failed to meet Listing 1.04, Disorders of the Spine, and provided this rationale:

The claimant's degenerative disc disease is evaluated under Section 1.04 of the Listing of Impairments for disorders of the spine.  However, the claimant has no evidence of nerve root compression, spinal arachnoiditis, or spinal stenosis as required to meet or equal the listing.  Additionally, in consideration of Acquiescence Ruling (AR) 15-1(4) and *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013), there is evidence of pain with limitation of motion and positive straight leg raise resting; there is no evidence of atrophy, sensory or reflex loss.  At times, the claimant had evidence of limited range of motion, positive straight leg raise testing on the left, sensory, and reflex loss.  However, the objective findings are not consistent throughout the record as at times his examinations were normal.  Her gait was routinely normal (Exhibits 8F, 14F, 19F, 20F, 32F, and 34F).  The overall record supports the claimant does not meet or equal the criteria of the listing.

(R. at 114-115.)

Listing 1.04A provides as follows:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), *resulting in compromise of a nerve root* (including the cauda equina) or the spinal cord.  With:

> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App, 1, §1.04A (emphasis added).  Therefore, Plaintiff was required to establish each of the following criteria in order to demonstrate that she met Listing 1.04A:

(1)  A disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture),

(2)  resulting compromise of a nerve root (including the cauda equina) or the spinal cord,

(3)  evidence of nerve root compression characterized by neuro-anatomic distribution of pain,

(4)  limitation of motion of the spine,

(5)  motor loss (atrophy with associated muscle weakness or muscle weakness [*sic*] ) accompanied by sensory or reflex loss,

(6)  if there is involvement of the lower back, positive straight-leg raising test (sitting and supine), and

(7)     the impairment has lasted or can be expected to last for a continuous period of at least 12 months.

!       Plaintiff asserts that the ALJ's Step Three analysis is "patently false" beginning with its threshold declaration that "there is no compromise of the nerve root or spinal cord." (ECF No. 11 at 6 citing R. at 114.) Plaintiff further contends that the ALJ "failed to address any of the medical opinions, MRI testing, EMG testing, and physical examination evidence" that "indicated nerve root involvement with limitation of motion of the spine, motor loss, sensory/reflex loss, and positive straight leg raise testing." (ECF No. 11 at 6.) Finally, Plaintiff cites *Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411 (6th Cir. 2011), presumably for the proposition that when performing a Listing analysis, an ALJ must "actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review." *Id*. at 416.

        Plaintiff's arguments are based on an inaccurate reading of the ALJ's decision. First, contrary to Plaintiff's assertion, the ALJ did not assert in Step Three that there was "no compromise of the nerve root or spinal cord." Rather, the ALJ stated that "there was no evidence of nerve root compression … as required to meet or equal the listing." (R. at 114.)

        Further, Plaintiff's *Reynolds* argument wholly fails to consider the ALJ's decision read as a whole. In *Reynolds*, the ALJ found that the claimant had severe mental and physical impairments at Step Two, but at Step Three, the ALJ analyzed only whether the claimant's mental impairments met or equaled a Listing, and completely failed to assess whether the claimant's physical impairments met or equaled any Listings. *Id.* at 415–16. The Sixth Circuit

11

Court of Appeals found that remand was appropriate because the ALJ "completely skipped an entire step of the necessary analysis." *Id.*

In this case, ALJ Hostovich did not completely fail to consider whether Plaintiff's physical impairments met any listed impairments. She specifically addressed whether Plaintiff met Listing 1.04. In doing so, she noted the relevant criteria and concluded that, although there was some evidence of limited range of motion, positive straight leg raise testing on the left, and sensory and reflex loss, there also was evidence of normal test results. These inconsistent objective findings led the ALJ ultimately to conclude that, overall, the record did not support a finding that the criteria of Listing 1.04A had been met. The ALJ's characterization of the medical evidence is supported by substantial evidence. For example, in March and April 2016, with respect to Plaintiff's cervical spine and her lumbosacral spine, her muscle tone and strength were found to be within normal limits and her sensation was found to be intact. (R. at 620-621; 638-639.) An examination in May 2016 revealed no muscle weakness. (R. at 642, 652.) Her muscle tone and strength were also reported as within normal limits and her sensation found to be intact in October and December 2016. (R. at 719; 725-726.) During an examination in February 2017, Plaintiff's range of motion was found to be normal, her muscle tone and strength were found to be within normal limits, and her sensation was intact. (R. at 733.) An examination in April 2016 revealed a negative straight leg raising test and no atrophy. (R. at 925.) Treatment notes from August 2017 reveal no limited range of motion. (R. at 1059.) An examination in December 2017 noted no atrophy, intact sensory, and normal gait. (R. at 1082.)

Further, although the ALJ's Step Three analysis may have been brief, when combined with her detailed discussion of the record evidence related to Plaintiff's spinal impairments, it

provided sufficient articulation for adequate judicial review. Moreover, on several occasions, the

Sixth Circuit has upheld an ALJ's sparse step three determination when an ALJ made "sufficient

factual findings elsewhere in his decision to support his conclusion at Step Three." *Forrest v.

Comm'r of Soc. Sec.*, 591 F, App'x 359, 366 (6th Cir. 2014) (*citing See Bledsoe v. Barnhart,* 165

F. App'x 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a

Step Three medical equivalency determination, and finding no need to require the ALJ to "spell

out every fact a second time")). Such is the case here. Accordingly, the Undersigned finds that

the ALJ did not err when analyzing if Plaintiff met the criteria for Listing 1.04A.

Additionally, as noted, Plaintiff bears the burden of proof to demonstrate that she meets

every component of a Listing.  To this end, she cites "a sampling of evidence" relevant to this

Listing that, in her view, the ALJ failed to discuss, including: (i)  MRI reports from 2016, 2017,

and 2018 that evidence nerve root "involvement" (R. at 484; 736-737; 1114[2]); (ii)  evidence of

neuro-anatomic distribution of pain (R. at 552-554; 970-971); (iii) evidence of limitation of

motion of the spine (R. at 552-554; 793-893); (iv) evidence of motor loss accompanied by

sensory or reflex loss (R. at 552-554); and (v) evidence of positive straight-leg raising tests (R. at

557-560; 1080-1083; 1307-1317).   (ECF No. 11 at 6.)  She wraps up her brief discussion with

the broad statement that this evidence is "not exhaustive" and that "similar evidence is readily

apparent throughout the treatment record."  (ECF No. 11 at 7.)

The Commissioner contends that, despite Plaintiff's citation to specific evidence, she has

failed to demonstrate evidence of nerve root compression sufficient to satisfy Listing 1.04A.  The

---

[2] Page 1114 of the record is not an MRI report from 2018 as Plaintiff represents.  It is a
progress note dated May 2, 2018, indicating that Plaintiff's physical examination revealed no

Court agrees.  The type of "compromise" of the nerve root or spinal cord required to satisfy the

introductory language of Listing 1.04 is satisfied by many disorders, but to satisfy Listing 1.04A,

a claimant must prove nerve root compression.  Here, Plaintiff does not assert that she has

demonstrated nerve root "compression" but argues only that the record contains evidence of

nerve root "involvement."  (ECF No. 11 at 6.)  This characterization is consistent with the lack of

any express statement in the record that Plaintiff suffers from nerve root compression.  For

example, both the 2016 and 2017 MRI reports cited by Plaintiff indicate only "impingement" on

the right L5 nerve root.  But, a finding of a compromised nerve root does not establish the nerve

root compression required by Listing 1.04A.  *Brauninger v. Comm'r of Soc. Sec.,* No. 18-3495,

2019 WL 2246791, at *6 (6th Cir. Feb. 25, 2019).  Moreover, to the extent that Plaintiff attempts

to demonstrate she meets the remaining criteria of Listing 1.04A by highlighting evidence

relating to the remaining criteria,  such an effort simply is insufficient.  *Kinney v. Saul*, No. 5:20-

CV-01155, 2021 WL 4342020, at *16 (N.D. Ohio July 12, 2021).  It is well settled that a

decision supported by substantial evidence will not be overturned even when substantial

evidence may support the opposite conclusion.  *Ealy*, 594 F.3d at 512.

Finally, Plaintiff does not  point to evidence of positive straight leg tests in both the

sitting and supine positions.  Although medical records document positive straight-leg raising

tests, the records cited by Plaintiff do not indicate if those tests were performed in either the

sitting and standing positions.  For example, a physiatry progress note dated January 18, 2017,

indicates only a positive straight leg raise test on the left, mild on the right, negative cross

straight leg raise.  (R. at 560.)  Another such note dated December 15, 2017, indicates "[p]ain

---

joint pain and no neck or back pain.

14

with a straight leg raise test the left is worse than the right." (R. at 1082.) Finally, notes dated November 14, 2018, state that, following a fall, Plaintiff experienced "[m]ild straight leg raise test positive bilaterally." (R. at 1310.)  Absent a more detailed description, those tests do not demonstrate the Plaintiff met Listing 1.04A.  *Asbury v. Comm'r of Soc. Sec.*, No. 1:18–cv–365, 2019 WL 3916479, at *10 (S.D. Ohio Aug. 20, 2019), (finding plaintiff could not meet Listing 1.04A where there was "no indication" if straight leg raising tests were positive for both the supine and sitting positions as Listing 1.04A requires"), *report and recommendation affirmed*, 2019 WL 4452677, (S.D. Ohio September 17, 2019); *Miller v. Comm'r of Soc. Sec.*, No. 1:10–cv–122778, 848 F. Supp. 2d 694, 710 (E.D. Mich. Oct. 21, 2011) (finding the plaintiff could not meet Listing 1.04A where she did not point to "positive straight leg tests in both the sitting and supine positions").  Therefore, Plaintiff cannot satisfy her burden of demonstrating that she meets all the criteria for Listing 1.04A.  Thus, even if the ALJ had erred when analyzing Listing 1.04A, any such error would have been harmless.  For these reasons, the Undersigned concludes that Plaintiff's allegation of error lacks merit.

**VI.  CONCLUSION**

For all the foregoing reasons, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

**VII.  PROCEDURE ON OBJECTIONS**

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding thatdefendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . . ") (citation omitted)).

**Date:**    September 29, 2021                    */s/ Elizabeth A. Preston Deavers*
                                                   **ELIZABETH A. PRESTON DEAVERS**
                                                   **UNITED STATES MAGISTRATE JUDGE**